### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | Case No. 24-CR-30147-SPM |
| **ANTHONY D. BRADLEY,** | |
| Defendant. | |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court are three Motions filed by Defendant Anthony D. Bradley: (1) a Motion for Leave to File Motions Out of Time (Doc. 48); (2) a Motion to Dismiss Indictment (Doc. 56); and (3) a Motion to Suppress Evidence (Doc. 57). For the reasons set forth below, all three Motions are **DENIED**.

### FACTUAL & PROCEDURAL BACKGROUND

On October 28, 2024 while conducting a "proactive crime suppression detail" in East St. Louis, law enforcement officers observed two Black male subjects wearing tan sweatshirts outside the John De Shields housing projects. (Doc. 57, p. 2 (quoting Investigative Report, p. 1)). Officer Bavetta stated that he recognized Defendant Bradley because of prior investigations associated with firearms and narcotics and alleges that he knew Bradley was on federal supervised release. (*Id.*, p. 2 (quoting Investigative Report, pp. 1–2)). Bavetta alleges that the two men turned and walked toward an unoccupied silver Ford Mustang once they saw the law enforcement vehicle. (*Id.*, p. 2 (citing Investigative Report, p. 2)). Officer Bavetta states that he

witnessed Bradley "pull a black object from the center of his waistband area" and then "[open] the driver door of the Mustang and [bend] down near the floorboard [of the car]." (*Id.*, pp. 2–3 (citing Investigative Report, p. 2)). Bavetta alleges that he identified this object as a handgun and that Bradley continued walking away from the Mustang until detained. (*Id.*, p. 3 (citing Investigative Report, p. 2)). Another officer alleged that he saw the handgun on the floorboard of the Mustang through the window. (*Id.*, p. 3 (citing Investigative Report, p. 2)). Bavetta reports that Bradley did not consent to a search of the vehicle and did not answer the officers' questions; subsequently, Sergeant Renner arrived on scene and used a vehicle lock out tool to unlock the door of the Mustang without obtaining a warrant. (*Id.*, p. 3 (citing Investigative Report, pp. 2–3)). Renner recorded the firearm on his bodycam. (*Id.*, p. 3 (citing Investigative Report, pp. 2–3)). Various pills were recovered from the Mustang and the keys to the Mustang were found in the left pocket of Bradley's jeans. (*Id.*, p. 3 (citing Investigative Report, pp. 2–3)). The Government reports that the firearm in question was loaded with fourteen rounds of ammunition and had a silver machinegun conversion device installed. (Doc. 58, p. 4 (citing *id.*, Ex. 1, pp. 2–3)). The recovered pill bottle lacked a prescription label; the seventeen pills inside were forensically determined to be oxycodone. (*Id.* (citing *id.*, Ex. 8)).

A Complaint was filed against Bradley on October 30, 2024. (*See* Doc. 1). Bradley was arrested on October 31, 2024 and arraigned on November 1, 2024. (*See* Docs. 6, 20). At the time of his arraignment, Bradley was represented by Assistant Federal Public Defender Todd Schultz. (Doc. 18). On November 5, 2024, a grand jury returned a one-count indictment charging Bradley with being a felon in possession of

a firearm in violation of 28 U.S.C. § 922(g)(1). (Doc. 20). United States Magistrate Judge Gilbert C. Sison entered an order on November 18, 2024 establishing December 13, 2024 as the deadline for pretrial motions. (*See* Doc. 29). Attorneys Talmadge E. Newton, IV and Dylan Ashdown were retained to represent Bradley on April 23, 2025 and Assistant Federal Public Defender Schultz was permitted to withdraw on the same day. (Docs. 34, 35, 36, 37).

Bradley filed the pending Motion for Leave to File Pre-Trial Motions Out of Time on October 21, 2025; in this Motion, he requests to file a Motion to Dismiss Indictment and a Motion to Suppress Evidence out of time. (Doc. 48). The Government responded in opposition on November 4, 2025 and Bradley filed a Reply on November 6, 2025. (Docs. 50, 54). In order to assess whether Defendant Bradley had shown good cause for the delay, this Court permitted Bradley to file his two Motions in order to assess his possibility of success on the merits. (Doc. 55). Bradley filed both Motions on November 10, 2025. (Docs. 56, 57). The Government responded to both on December 9, 2025. (Docs. 58, 59, 60).

## LEGAL STANDARD

A motion to suppress seeks to exclude evidence obtained in violation of a defendant's constitutional rights. The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. The Supreme Court has explained that "[i]n order to effectuate the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures, this Court long ago conferred upon defendants in federal prosecutions the right, upon motion and proof, to have excluded from trial

evidence which had been secured by means of an unlawful search and seizure." *Simmons v. United States*, 390 U.S. 377, 389 (1968).

"The Supreme Court has consistently held that 'Fourth Amendment rights are personal rights which . . . may not be vicariously asserted.'" *United States v. Carlisle*, 614 F.3d 750, 756 (7th Cir. 2010) (citing *Rakas v. Illinois*, 439 U.S. 128, 134 (1978)). In other words, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134, (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969)).

The Supreme Court has explained that whether a defendant can challenge a search is an issue of substantive Fourth Amendment law. *See Carlisle*, 614 F.3d at 756 (citing *Rakas*, 439 U.S. at 143). That substantive law "protects against warrantless intrusions by the government into areas in which that individual holds a reasonable expectation of privacy." *United States v. Villegas*, 495 F.3d 761, 767 (7th Cir. 2007) (citing *Unites States v. Yang*, 478 F.3d 832, 835 (7th Cir. 2007)).

Additionally, the Supreme Court has determined that in certain circumstances, police officers can lawfully conduct a warrantless search. In *Terry v. Ohio*, the Court ruled that "police conduct, necessarily swift action predicated upon the on-the-spot observations of the officer on the beat . . . as a practical matter could not be, subjected to the warrant procedure." *Terry v. Ohio,* 392 U.S. 1, 20 (1968). "[A]lthough most warrantless searches 'are per se unreasonable under the Fourth Amendment, the automobile exception to the warrant requirement permits 'authorities to search a car without a warrant if they have probable cause.'" *United*

*States v. Devalois*, 128 F.4th 894, 900 (7th Cir.), *cert. denied*, 145 S. Ct. 2804 (2025) (first quoting *Katz v. United States*, 389 U.S. 347 (1967); then quoting *United States v. Jackson*, 103 F.4th 483, 486 (7th Cir. 2024) (citing cases)).

That being said, "when the government obtains evidence in violation of an individual's Fourth Amendment rights, the remedy is generally the exclusion of that evidence—and evidence that is the fruit of the illegal search or seizure—at trial." *United States v. McGill*, 8 F.4th 617, 624 (7th Cir. 2021) (citing *Utah v. Strieff*, 579 U.S. 232, 237–39 (2016)). "But this rule does not apply automatically. Rather, it applies 'only . . . where its deterrence benefits outweigh its substantial social costs,' and certain exceptions to the rule have arisen accordingly." *Id.* (citing *Strieff* at 237–39). One of these exceptions is the "good faith" exception, which applies when officers "act with an objectively reasonable good-faith belief that their conduct is lawful." *United States v. Rainone*, 816 F.3d 490, 495 (7th Cir. 2016) (citation modified).

## ANALYSIS

### I. Timeliness

There is no dispute that Bradley's pretrial motions were not timely filed. In his Motion, Bradley argues that "continuing defense investigation, case evaluation, and strategy discussions with the client have led counsel to this request to file motions out of time" and that "Defense counsel believes these motions are necessary to ensure the Defendant is provided Due Process and Equal Protection under the law." (Doc. 48, pp. 1–2). The Government argues that "Defendant cannot show any justification for the delay in filing either of his proposed motions" and that there are not any new developments in the law related to either of his pretrial motions that would provide

justification for the delay in the filing of both notions. (Doc. 50, pp. 2–3). The Government also notes that Defendant's current counsel requested four continuances (in addition to the two continuances requested by Assistant Federal Public Defender Schultz). (*Id.*, p. 2 (citing Docs. 30, 32, 38, 41, 43, 45); *see also* Doc. 58, pp. 5–6). In his Reply, Defendant Bradley argues that "defense priorities and strategies in any case are constantly shifting" and that "[t]o deny the Defendant the ability to shift priorities and strategies, especially as new counsel is onboarded to his case denies him the right to Due Process under the 5th Amendment and the Effective Assistance of Counsel under the 6th Amendment." (Doc. 54, p. 1).

"Under Rule 12(c)(3) of the Federal Rules of Criminal Procedure, if a party does not meet the deadline for filing a motion to suppress, the motion is untimely." *United States v. Jackson*, No. 22-CR-55, 2023 WL 3932853, at *3 (E.D. Wis. June 9, 2023), *aff'd*, 132 F.4th 1019 (7th Cir. 2025). That being said, "[t]he court may nevertheless consider the motion if the party shows good cause for failing to file it in a timely manner." *Id.* (citing FED. R. CRIM. P. 12(c)(3); *United States v. Jackson*, 5 F.4th 676, 682 (7th Cir. 2021)).

This Court holds that Defendant Bradley has not shown good cause for his failure to file timely pretrial motions. As the Government notes, the facts and law utilized in his Motion to Dismiss and Motion to Suppress have been available during the pendency of this case. (*See* Doc. 50). For this reason alone, his Motion for Leave to File Motions Out of Time (Doc. 48) must be denied along with his Motion to Dismiss and Motion to Suppress.

In *Jackson*, the Seventh Circuit affirmed the district court's determination that the defendant's attorney had not provided good cause for the ten-month delay in filing pretrial motions. 132 F.4th at 1020. They noted they "could stop there, but Jackson then could seek relief under 28 U.S.C. § 2255 on the ground that the lawyers' unjustified delay violated his right under the Sixth Amendment to the assistance of counsel." *Id*. They continued, noting that "[o]ne question in such a proceeding would be whether deficient legal assistance caused prejudice—in other words, whether a timely motion to suppress would have been granted." *Id*. They found it "prudent" for the district judge to address this question "to fend off any collateral attack." *Id*. (citing 2023 WL 3932853 at *3–7 (E.D. Wis. June 9, 2023). For this reason, this Court will assess whether or not Bradley's two pretrial Motions would have been granted.

## II. Motion to Dismiss Indictment (*Bruen*)

In his Motion to Dismiss, Bradley argues that "18 U.S.C. § 922(g)(1), as applied to him, is unconstitutional in violation of the Second Amendment, based on the United States Supreme Court's holding in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022)." (Doc. 56, p. 1).

Before delving too deeply into the analysis, this Court notes that Bradley cites to the Third Circuit's opinions in *Range v. Attorney General*, 69 F.4th 96, 106 (3d Cir. 2023) (en banc) and in *Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) (en banc). (Doc. 56, pp. 2–3). Bradley correctly states that the Supreme Court granted certiorari, vacated the judgment, and remanded the case for further proceedings in light of *Rahimi*. *See Garland v. Range*, 144 S. Ct. 2706 (July 2, 2024) (Mem.) (citing *Rahimi*). Although the Third Circuit reached the same result after remand (finding

that § 922(g)(1) is unconstitutional), this is not the law of *this* Circuit. *See Range v. Attorney General*, 124 F.4th 218 (3rd Cir. 2024) (en banc). Bradley next cites a variety of district court cases, all of which are currently pending on appeal before the Seventh Circuit. (*See* Doc. 56, p. 3) (citing *United States v. Prince*, No. 1:22-CR-240, 2023 WL 7220127 (N.D. Ill. Nov. 2, 2023) (appeal pending, No. 23-3155); *United States v. Griffin*, No. 1:21-CR-693, 2023 WL 8281564 (N.D. Ill. Nov. 30, 2023) (appeal pending, No. 23-3330); *United States v. Taylor*, No. 23-40001-SMY (S.D. Ill. Jan. 22, 2024) (appeal pending, No. 24-1244); *United States v. Cherry*, No. 3:23-30112-SMY (S.D. Ill. Feb. 1, 2024) (appeal pending, No. 24-1322); *United States v. Crisp*, No. 3:23-30006-SMY (S.D. Ill. Feb. 16, 2024) (appeal pending, No. 24-1406); *United States v. Martin*, No. 4:23-40048-SMY (S.D. Ill. Feb. 22, 2024) (appeal pending, No. 24-1438)). Bradley also cites the Seventh Circuit decision in *Atkinson v. Garland*, 70 F.4th 1018 (7th Cir. 2023), which declined to address the *Bruen* historical test on the merits, instead remanding the case for further development. *See id.* at 1021–25.

At the outset, the Court notes that Bradley does not point to a historical basis for *individualized* assessments and, even if he had, he has not demonstrated that Section 922(g)(1) is unconstitutional as applied to him. As noted above, the Seventh Circuit's decision in *Atkinson* required a party challenging the constitutionality of Section 922(g)(1) to develop a historical record that justified individual assessments. *See* 70 F.4th at 1023; *see also United States v. Gutierrez*, No. 22-2778, 2024 WL 1125080, at *12 (N.D. Ill. Sept. 4, 2024) (applying *Atkinson* in the context of a criminal challenge to Section 922(g)(1)). As Atkinson did not develop this historical basis for individual assessments, the Seventh Circuit found that his argument fell short and

remanded the case to develop this record further. *Atkinson*, 70 F.4th at 1023. In a similar vein, Bradley fails to develop any historical basis for individual assessment.

Bradley's motion is threadbare and contains misstatements of the Supreme Court's holding in *Bruen*. For example, Bradley argues that the lack of a distinctly similar historical regulations compels the conclusion that the statute is unconstitutional as applied to him. (Doc. 56, pp. 4–7). However, *Bruen* noted that a historical analogue need not be a "historical twin," but rather a "relatively similar" and "well-established and representative historical analogue" will pass constitutional muster. 597 U.S. at 30; *see Rahimi*, 602 U.S. at 692 ("The law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" (citing *Bruen* at 30)). Therefore, the history must not demonstrate a tradition of *permanently* disarming those who are *like* Mr. Bradley, but rather simply analogous laws that are relatively similar. Further, Bradley misstates *Bruen*'s discussion on historical regulations relating to longstanding societal problems. (Doc. 56, p. 6). Bradley states that if the Founders could have passed a particular regulation that would have confronted a longstanding societal problem but declined to do so, the lack of a regulation means that the regulation is unconstitutional. (*Id.*). However, *Bruen* made clear that such an absence of regulation merely serves as evidence of the unconstitutionality of such a regulation, not proof of unconstitutionality. 597 U.S. at 26. It is possible that the Founders did not exercise the full extent of the Second Amendment, and thus requiring a historical twin, as Bradley's framing of *Bruen* required, would too severely limit the scope of permissible regulations on firearms. *See Rahimi* at 737–40 (Barrett, J., concurring).

Even if that were not the case, this Court has issued various orders on similar Section 922(g)(1) challenges that discussed the history and traditions standard. *See United States v. Ware*, 673 F. Supp. 3d 947 (S.D. Ill. 2023); *United States v. Dean*, No. 22-CR-30117-SPM, 2024 WL 964675 (S.D. Ill. Mar. 6, 2024); *United States v. Bowden*, No. 24-CR-30117-SPM, 2025 WL 870110 (S.D. Ill. Mar. 20, 2025); *United States v. Avila*, No. 25-CR-30026-SPM, 2025 WL 1938537 (S.D. Ill. July 15, 2025). While some of the laws mentioned in the Court's previous history and traditions analysis would certainly fail present-day constitutional scrutiny and may not be worthwhile to factor into any future analysis under *Bruen* in retrospect, the Court finds, as others have before it, that Section 922(g)(1) is part of the historical tradition "that delimits the outer bounds of the right to keep and bear arms" under the Second Amendment, such that it is not unconstitutional as applied to Bradley. *Bruen* at 19.

As stated before, Bradley does little to rebut this conclusion. Rather than addressing laws which may in fact be sufficiently analogous to Section 922(g)(1), Bradley instead relies on conclusory statements of history. (Doc. 56, pp. 4–7). Surety laws and going armed laws are just two examples of regulations which may be relevant to this historical inquiry yet were not addressed by Bradley. *See Rahimi*, 602 U.S. at 693–97. The Supreme Court has previously articulated that the history of these two laws established the principle that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 698.

Bradley's attempt to narrow the historical inquiry to only include laws which *permanently* disarmed felons *like* Mr. Bradley fails, again, because it misstates the

central holding of *Bruen,* that a historical analogue is required, not a historical twin. 597 U.S. at 27–29; *see Rahimi* at 692. This attempt to limit the historical analysis also fails because it misrepresents Section 922(g)(1) as a permanent disarming of felons. While § 922(g)(1) does disarm felons, it does not do so permanently, as the law does contain mechanisms to render the disarmament non-permanent. Importantly, this prohibition does not permanently extend to felons who have received a pardon, have had their record expunged, or who have received a restoration of their civil rights. 18 U.S.C. § 921(a)(20).

The Government cites *to United States v. Gay*, 98 F.4th 843 (7th Cir. 2024), *reh'g denied*, No. 23-2097, 2024 WL 3816648 (7th Cir. Aug. 14, 2024) for the proposition that an as-applied constitutional challenge to § 922(g)(1) is only designed for those who are law-abiding citizens. (Doc. 61, p. 19 (citing 98 F.4th at 846–47)). In *Gay*, the Defendant had been "convicted of 22 felonies, including aggravated battery of a peace officer and possessing a weapon while in prison." *Id.* at 847. The Seventh Circuit noted that "[i]nstead of contesting § 922(g)(1) through a declaratory-judgment action, as Range did, Gay violated the law in secret and tried to avoid detection. He fled from the police by car and on foot, and flight to avoid prosecution is a crime in most if not all states." *Id.* (citing *United States v. Holden*, 70 F.4th 1015 (7th Cir. 2023)).

The preceding analysis notwithstanding, Bradley has not made a sufficient showing that Section 922(g)(1) would be unconstitutional as applied to him. A court may consider Bradley's criminal record in determining whether the defendant "poses a clear threat of physical violence to another." *Rahimi*, 602 U.S. at 698. The Court

determines that Bradley's criminal history demonstrates such a threat; the Government reports that Bradley's criminal history includes "Second Degree Murder, Tampering with Witnesses, and multiple cases involving illegal firearm possession." (Doc. 61, p. 47; *see also id.*, p. 1 n.1). The Government argues that "[t]his criminal record more than supports a finding of dangerousness (even assuming that label is relevant to the § 922(g)(1) constitutionality analysis) as it reflects the risk Defendant poses to public safety, his disregard for the law, and society's inability to trust that he will use a weapon responsibly." (*Id.*, p. 47 (citing *United States v. Bullock*, 632 F.3d 1004, 1016 (7th Cir. 2011); *United States v. Price*, 656 F. Supp. 3d 772 (N.D. Ill. 2023) (Doc. 22, p. 5 n.2))); *see also United States v. Gay*, 98 F.4th 843, 846–47 (7th Cir. 2024)). Thus, there is no colorable argument that Defendant Bradley is a "law-abiding citizen" with his criminal history.

While this Court is not willing to say that an as-applied challenge to § 922(g)(1) could *never* be successful, the facts of this case do not cast any doubt on the constitutionality of this prohibition. In this case, neither the underlying felony nor the amount of time that has lapsed since the committing of that felony demonstrates that Section 922(g)(1) as applied to Bradley is unconstitutional. Rather, the facts of this case firmly place Bradley's prohibition on the possession of firearms within the limits of the Second Amendment. For these reasons, the Court finds that Bradley's Section 922(g)(1) charge in the Indictment is constitutional and his Motion to Dismiss the Indictment (Doc. 56) would have been denied on the merits if timely filed.

### III.     Motion to Suppress

**A.     Standing**

In his Motion to Suppress, Bradley argues that he has standing to contest the constitutionality of the warrantless search of the silver Mustang at issue in this case. (*See* Doc. 57). He states that the car in question was a rental car rented by his significant other. (Doc. 57, p. 5). He noted that the keys to the car were found in Bradley's own pocket when he was detained. (*Id.*). Bradley relies on the Supreme Court's holding in *Byrd v. United States*, 584 U.S. 395 (2018) for the proposition that "someone in otherwise lawful possession and control of a rental car has a reasonable expectation of privacy in it even if the rental agreement does not list him or her as an authorized driver." (Doc. 57, p. 5 (quoting *Byrd* at 398–99)). The Government does not dispute Bradley's standing. Therefore, this Court holds that Bradley has standing to challenge the warrantless search of the silver Mustang in question.

**B.     The Search**

Bradley argues that law enforcement did not have probable cause to search the silver Mustang. (Doc. 57, pp. 5–7). Bradley insists that the fact that Bradley was present in a "very high crime" area and walked away from police is not enough to establish reasonable suspicion, let alone probable cause. (*Id.*, pp. 6–7 (citing *United States v. Lopez*, 907 F.3d 472, 479 (7th Cir. 2018); *Illinois v. Wardlow*, 528 U.S. 119, 124, (2000); *United States v. Bohman*, 683 F.3d 861, 864 (7th Cir. 2012); *United States v. Salzano*, 158 F.3d 1107, 1113 (10th Cir. 1998); *United States v. Brown*, 188 F.3d 860, 865 (7th Cir. 1999))). He also argues that the fact that the officer recognized Bradley is insufficient to establish probable cause and to justify detaining him for

questioning. (*Id.*, p. 7 (citing *United States v. Jerez*, 108 F.3d 684, 693 (7th Cir. 1997))).

In opposition, the Government argues that seizure of the weapon at issue does not fall under the protection of the Fourth Amendment because Bradley knowingly exposed it to the public. They argue that Bradley did not have a reasonable expectation of privacy because the firearm in question was visible through the vehicle's window. (Doc. 58, pp. 6–7 (quoting *United States v. Thompson*, 811 F.3d 944, 948 (7th Cir. 2016); *Carpenter v. United States*, 585 U.S. 296 (2018); *Smith v. Maryland*, 442 U.S. 735, 740 (1979); *United States v. Ware*, 914 F.2d 997, 1000 (7th Cir. 1990)). They argue that all three elements of the plain view doctrine are met, arguing that (1) officers were on public property when they saw and recognized Bradley, (2) the weapon in question was in plain view through the silver Mustang's window, and (3) the incriminating nature of the weapon was plainly apparent. (*Id.*, pp. 7–8 (citing *United States v. Contreras*, 820 F.3d 255, 262 (7th Cir. 2016); 720 ILL. COMP. STAT. 5/24-1(a)(4))). The Government argues that *Byrd v. United States* is distinguishable because it involved the search of a vehicle trunk, not a firearm in plain view through the vehicle's window. (*Id.*, p. 8 (citing 584 U.S. 395, 398–99 (2018))).

The Government also argues that the warrantless seizure of the firearm is justified under the community caretaking doctrine established by the Supreme Court. (*Id.*, p. 9 (citing *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973); *United States v. Lugo*, 978 F.2d 631, 636 (10th Cir. 1992))). They note that "the reporting officer identified that the John DeShields Homes and surrounding area are considered high crime

areas which include instances of 'shootings, narcotic sales, illegal firearms possession, and carjackings'" (*id.* (citing *id.*, Ex. 1, p. 2)) and that "[a] machinegun in plain view on the floorboard making it readily accessible to children, vandals, or thieves is plainly dangerous" (*id.*).

Finally, the Government also argues that the warrantless search in question is justified by the automobile exception. (*Id.*, p. 10 (citing *Carroll v. United States*, 267 U.S. 132, 153–56 (1925); *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005))). The Government provides an image of Bradley from the date in question (Doc. 58, p. 12, Ex. 8) that shows that lighting conditions at the time of Bradley's arrest did not prevent police from clearly identifying Bradley. They note that Bradley walked away from law enforcement, bent down to leave the firearm inside the car, walked away, and then refused to comply with law enforcement commands when they attempted to stop him. (*Id.*, p. 13). Moreover, as discussed *supra*, the firearm was in plain view through the window of the silver Mustang.

This Court holds that probable cause existed to search the vehicle in question. Therefore, considering the above, this Court holds that the search of the silver Mustang did not violate Bradley's rights guaranteed by the Fourth Amendment. Therefore, even if it had been timely filed, Bradley's Motion to Suppress would not succeed on the merits, as the warrantless seizure of the firearm and pills from the silver Mustang comported with (1) the plain view doctrine; (2) the community caretaking doctrine, and (3) the automobile exception to the warrant requirement.

### C. Evidentiary Hearing

Additionally, while Bradley requests an evidentiary hearing (Doc. 57, p. 7), this Court concurs with the Government that Bradley has not met his burden to allege any disputed material facts (Doc. 58, pp. 14–15). Therefore, this Court holds that an evidentiary issue is not required. *See United States v. Dixon*, 137 F.4th 592, 610 (7th Cir. 2025) (quoting *United States v. Edgeworth*, 889 F.3d 350, 353 (7th Cir. 2018)) (citing *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011)).

### CONCLUSION

For the foregoing reasons, Defendant Anthony D. Bradley's Motion for Leave to File Motions Out of Time (Doc. 48) is **DENIED** and his Motion to Dismiss Indictment (Doc. 56) and Motion to Suppress Evidence (Doc. 57) are both **DENIED**. Bradley's Motion to Dismiss and Motion to Suppress are both denied (1) for being untimely filed without good cause and (2) because both would fail on the merits even if timely filed. Therefore, Bradley has failed to show good cause for failing to timely file his Motions and, in addition, the Indictment at issue does not violate the Supreme Court precedent established in *Bruen* and the search of the vehicle in this case did not violate Bradley's Fourth Amendment rights.

**IT IS SO ORDERED.**

**DATED:   January 7, 2026**

s/ <u>Stephen P. McGlynn</u><br>
STEPHEN P. McGLYNN<br>
U.S. District Judge